IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**WILLIE H. HADLEY, II**                                                                                          **PLAINTIFF**

v.                            Case No. 4:20-cv-01114-LPR

**WILMINGTON SAVINGS FUND SOCIETY FSB,** *et al.*                              **DEFENDANTS**

## ORDER

On August 17, 2020, Mr. Willie H. Hadley, II ("Mr. Hadley") filed a Complaint against Defendants Wilmington Savings Fund Society, FSB ("Wilmington") and Servis One, Inc., d/b/a BSI Financial Services ("BSI"), in the Circuit Court of Pulaski County, Arkansas. (Doc. 1 at 15). Mr. Hadley alleges that Defendants incorrectly reported the status of his debt with them and that the incorrect reporting impeded his ability to refinance with another bank. (Doc. 2 at 4). On September 18, 2020, Defendants removed the case to this Court. (Doc. 1). Pending before the Court is Mr. Hadley's Motion to Remand; he argues that the amount in controversy does not exceed the jurisdictional minimum of $75,000. (Doc. 5). For the reasons discussed below, the Motion is GRANTED.

## Background

Defendant Wilmington is a federal savings bank and Defendant BSI services loans for Wilmington. (Doc. 2 at 1). Defendants and Mr. Hadley were engaged in litigation about a loan agreement before this case began; Mr. Hadley had sued Wilmington in April of 2016 for "a restraining order against [a] statutory foreclosure sale, a determination that Wilmington was not a valid assignee of the subject mortgage, and an accounting of the amount of the indebtedness." (*Id.*

at 2). Wilmington counterclaimed and filed a third-party complaint. (*Id.*). After substantial litigation, the parties entered into a Settlement Agreement in July of 2019. (*Id.*).

The Settlement Agreement included provisions for a loan modification. (*Id.*). Under the Settlement Agreement, Mr. Hadley's debt of $514,973.33 would be reduced to $265,000[1] as long as he made timely monthly payments for three years or paid the debt in full. (*Id.* at 2, 14). The Agreement included a provision regarding "Credit Score Reporting" which read as follows:

> Upon execution of the Agreement, the Modification of the Note, and the payment of the Down Payment by Hadley, BSI Financial Services, as servicer for Trustee for Brougham, for the time period that it serviced the Note to present, will change the payment history on the Note to the credit bureaus as "No payment history available." Hadley hereby acknowledges and agrees that nothing herein prevents Trustee from Brougham from reporting future payment history related to the Modification of the Note as past due if Hadley fails to make payments pursuant to the Agreement and the Modification of the Note.

(*Id.* at 16). This was important to Mr. Hadley because he "intended then and still intends to refinance the loan with another lender as soon as possible" because of his "terrible experience" with financing with Defendants previously. (*Id.* at 3).

Mr. Hadley alleged that he and Defendants reached "a verbal agreement on the eve of trial" and then took several weeks to put the agreement into writing. (*Id.*). As a result, there is a timing discrepancy in the Settlement Agreement: the first payment from Mr. Hadley was due on June 1, 2019 while "the parties did not settle officially until July 2, 2019." (*Id.*). Mr. Hadley provided an email in which his lawyer asked Defendants to make Mr. Hadley's first payment due on July 1, 2019 instead of June 1, 2019. (*Id.* at 21). Defendants responded that Mr. Hadley should "send the June payment ASAP and [Defendants] will not assess a late fee." (*Id.*).

---

[1] The Settlement Agreement states that the outstanding balance would be reduced to $265,000 and a $3,000 lump sum payment would be due immediately. (Doc. 2 at 14). As a result, the figures of $265,000 and $262,000 (subtracting the $3,000 lump sum) are used interchangeably in the briefing to reflect how much Mr. Hadley owes.

2

In the course of the instant case, Defendants filed a Declaration by Melissa Cantu, an Assistant Vice President at BSI. (Doc. 16-1). Ms. Cantu stated that Mr. Hadley made his $3,000 down payment and first mortgage payment on July 2, 2019 instead of June 1, 2019, making it late. (*Id.* at 3). She also listed as late payments the months of August 2019, September 2019, November 2019, January 2020, April 2020, May 2020, June 2020, August 2020, October 2020, and December 2020. (*Id.* at 4). Mr. Hadley, on the other hand, alleges that he "made the June payment and has since made every monthly payment pursuant to the Agreement timely and in full." (Doc. 2 at 3).

In January of 2020, Mr. Hadley applied for a loan to the Navy Federal Credit Union ("NFCU") seeking to refinance his debt to Defendants. (*Id.*). Mr. Hadley corresponded by email with Ms. Christen Boyer, a mortgage processor from NFCU, regarding a mortgage verification from Defendants. (*Id.* at 3, 25). In their correspondence, Ms. Boyer noted that she would seek a verification of Mr. Hadley's mortgage. (*Id.* at 25). Mr. Hadley responded that he was in contact with his attorney regarding the mortgage verification and that his attorney had reached out to BSI "and shared the importance that BSI report the account correctly on the verification." (*Id.* at 24). When the mortgage verification came back to Ms. Boyer, she reported to Mr. Hadley that it "reflect[ed] 7 months of late payments." (*Id.* at 22). The email contained no information about whether Mr. Hadley's loan was approved or declined, and whether it was declined *because of* the information from the mortgage verification. The email from Ms. Boyer to Mr. Hadley only stated, "I received the verification of mortgage back and it's reflecting 7 months of late payments." (*Id.*).

As result, Mr. Hadley alleges that "Defendants continue to provide incorrect information concerning the account to [Mr.] Hadley's potential lenders, thereby thwarting his efforts to refinance the indebtedness under the Agreement." (*Id.* at 4). He filed an action against Defendants in state court on August 17, 2020. (Doc. 1 at 15). He seeks "specific performance of the

Agreement and an Order . . . restraining Defendants from reporting or verifying [Mr.] Hadley's account incorrectly," as well as "an award of costs and attorney's fees." (Doc. 2 at 5).

## Legal Standard

A court sitting in diversity has subject matter jurisdiction when the parties are diverse, and the value of the dispute exceeds $75,000. 28 U.S.C. § 1332(a)(1). When a defendant removes and "its notice of removal includes a good faith, plausible allegation that the amount in controversy exceeds" the amount in controversy requirement, then that "allegation should be accepted when not contested by the plaintiff or questioned by the court." *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 635-36 (8th Cir. 2017) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014)). When the plaintiff contests the amount in controversy put forward by the defendant, both sides submit proof and the district court must decide by a preponderance of the evidence whether the amount in controversy is satisfied. *Id.* (citing *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009)). To be more specific, Defendants must prove by a preponderance of the evidence that a fact finder *could*—that is, might—award relief in excess of $75,000. *See Kopp v. Kopp*, 280 F.3d 883, 884-85 (8th Cir. 2002).

When the plaintiff does not ask for a money judgment for a certain sum or for specified damages, the court must consider the "value to the plaintiff of the right that is in issue." *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1018-19 (8th Cir. 2010). But this value is not based on the plaintiff's subjective viewpoint or its good-faith estimate. *Id.* at 1019. Instead, the "question is the actual value of the object of the suit." *Id.* The amount in controversy should be based on "specific factual allegations" and not "mere speculation." *Waters*, 873 F.3d at 636. The "amount in controversy is not established by a preponderance of the evidence if a court must resort 'to

4:20-cv-01114-LPR
04/13/21

conjecture, speculation, or star gazing.'" *Id.* (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)).

## **Discussion**

Mr. Hadley moves to remand this action to state court. (Doc. 5). He argues that the amount in controversy from the plaintiff's viewpoint is $24,750, which is his equity in the indebted property. (*Id.* at 1). Mr. Hadley relies on the statement from *Usery v. Anadarko Petroleum Corp.* that the amount in controversy "is the value to the plaintiff of the right that is in issue." 606 F.3d at 1018. He argues that he "seeks specific performance of the settlement agreement so that he can refinance his mortgage loan with another lender." (Doc. 6 at 3). Financing with another lender will allow him to pay in full the outstanding loan obligation now encumbering the property. And because of that, he argues, the value to him "of the right sought to be enforced is his equity in the subject property." (*Id.*). Mr. Hadley did not provide any case citation to support his assertion that home equity in a mortgaged property constitutes the correct measurement for determining the amount in controversy.

Defendants disagree with Mr. Hadley's assertion of the amount in controversy. They argue instead that the "amount in controversy is simply the fair market value of the property." (Doc. 12 at 5). Defendants cite to cases dealing with alienation of property where "a homeowner seeks to prevent a mortgage lender from foreclosing." (*Id.*). Defendants assert that the amount in controversy here is $289,750, which is "the current value of the real estate at issue." (*Id.* at 8).[2] They argue in the alternative that the amount in controversy could be $249,973.33, which is "the benefit of the bargain from Plaintiff's viewpoint" of being able to refinance his debt after the

---

[2] Mr. Hadley counters that he is not seeking "to invalidate the underlying obligation" of the $289,750 appraised value of the property, which Defendants contend is the amount in controversy. (Doc. 6 at 3).

5

Settlement Agreement.  (*Id.*).  That is, if Mr. Hadley can obtain funds to pay off the $262,000 identified in the Loan Modification portion of the Settlement Agreement, then he escapes having to pay the $511,973.33 that he would otherwise owe to Defendants.

The Court reads Mr. Hadley's Complaint to ask for one remedy only: specific performance. Mr. Hadley wants the Court to order Defendants to report to other entities that Mr. Hadley has not made late payments.  Accordingly, the "actual value of the object of the suit" is not his home equity as Mr. Hadley contends; nor is it the total value of the real estate or benefit of the bargain as Defendants contend.  *Usery*, 606 F.3d at 1019.  Instead, the "actual value of the object of the suit" is the value that Mr. Hadley will receive from Defendants reporting to creditors that he does not have late payments, or that there is "no payment history available."[3]

The value of this specific performance is indeterminable.  The Court doesn't know whether any potential lender or creditor would extend money or credit to Mr. Hadley if Defendants report the way Mr. Hadley wants.  The email from NFCU did not indicate that Mr. Hadley's loan application was denied (or exclusively denied) based on Defendants' reporting seven months of late payments.  The Court does not know whether Mr. Hadley has any other negative marks on his credit history and how much the BSI report factored into (or would in the future factor into) the decision-making process of NFCU or other potential lenders or creditors.  The Court is left with nothing more than "conjecture, speculation, [and] star gazing" as to what outcome would have resulted had Defendants reported that Mr. Hadley had no late payments or no payment history. *Waters*, 873 F.3d at 636.  Likewise, the Court can only speculate as to what other lenders or

---

[3] Because the question here is one of subject matter jurisdiction and thus raises *sua sponte* duties for the Court, the Court may go beyond the specific legal theories articulated by the parties.  *See Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011) ("It is well established that a court has a special obligation to consider whether it has subject matter jurisdiction in every case.").

creditors may do in the future, especially given how little is known about Mr. Hadley's credit history.

In short, on this record, Defendants cannot prove by a preponderance of the evidence that the amount in controversy (even taking potential legal fees into account) exceeds $75,000. And thus the Court cannot say that the amount in controversy meets the jurisdictional minimum.

## **Conclusion**

Plaintiff Willie Hadley's Motion to Remand is GRANTED. (Doc. 5). The Court orders this case be remanded to the Circuit Court of Pulaski County, Arkansas.

IT IS SO ORDERED this 13th day of April 2021.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE